```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


WAKA, LLC,                          )
                                    )
      Plaintiff,                    )
                                    )
            v.                      )     1:06cv178 (JCC)
                                    )
DCKICKBALL, et al.,                 )
                                    )
      Defendants.                   )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendants' motion to dismiss the complaint for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer venue. For the reasons stated below, the Court will deny Defendants' motions to dismiss and grant the alternative motion to transfer to the District of Columbia.

### I. Background

Plaintiff, WAKA, LLC ("WAKA"), is a social kickball organization that has its principal place of business in Chantilly, Virginia. It was founded in 1998, at which time it promulgated the "Official Kickball Rules." By 2004, WAKA had organized leagues in fifteen states.

DCKickball is a not-for-profit, non-stock corporation. DCKickball was registered in the District of Columbia on March 21, 2005, naming Carter Rabassa as its registered agent. Rabassa

-1-

served as vice president of the WAKA DC Independence Division from May to August of 2002 and as president of the same division the following summer.

On February 15, 2006, Plaintiff filed a complaint claiming copyright infringement of the WAKA Rules and defamation stemming from comments by Rabassa printed in the Washington City Paper.  On March 30, 2006, Defendants filed a motion to dismiss the complaint for lack of personal jurisdiction and for improper venue or, in the alternative, to transfer venue.  These motions are currently before the Court.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks the requisite personal jurisdiction.  To establish jurisdiction over a non-resident, this Court must consider whether jurisdiction is authorized by Virginia law and whether the exercise of personal jurisdiction is consistent with traditional notions of fair play and due process.  *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985).  Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process.  *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).  It may, however, be possible

for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of a Virginia long-arm statute provision.  *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D. Va. 1996).  As always, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

B. Motion to Transfer

Section 1404(a) addresses motions to transfer.  With respect to transfer, the relevant portion of the statute instructs that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

This rather ambiguous standard has been interpreted to require consideration of the following four factors: (1) the plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice.  *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-62 (E.D. Va. 1988) (Ellis, J.).  The interest of justice factors include such circumstances as the pendency of a related action, the court's familiarity with the applicable law, docket

conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment. *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (Spencer, J.).

### III. Analysis

Defendants first argue in their motion to dismiss that this Court lacks personal jurisdiction over them, and therefore the case should be dismissed. Defendants state that their contacts with Virginia are constitutionally insufficient to establish personal jurisdiction in that Rabassa is a resident of the District of Columbia, and also DCKickball and its successor, DCK Sports LLC ("DCK Sports"), are registered in the District of Columbia and have their principal and only place of business in the District of Columbia. Neither DCKickball nor DCK Sports maintain an office in Virginia, have licenses to do business in Virginia, or conduct games or activities in Virginia. Defendants claim that DCKickball has never been advertised in any Virginia publication or on any Virginia television or radio program. In fact, the only means of advertisement that Defendants assert that they conduct is via distribution of flyers in the District of Columbia, word of mouth, and on the Internet at three specific web sites.

Plaintiff counters these arguments by suggesting that Defendants' Internet activity and statements made to a national newspaper are sufficient to establish personal jurisdiction in Virginia.  Specifically, Plaintiff states that "[t]he Defendants' solicitation of Virginia residents on their web site, . . . is, in and of itself, sufficient to give the Court *in personam* jurisdiction over Defendants, especially insofar as a number of Virginia residents have actually availed themselves of the Defendants' offer to play kickball after work in Washington D.C."  (Plf.'s Opp. 4.)  Plaintiffs then note that all five executive committee members and thirteen out of sixteen team captains of DCKickball reside in Virginia.

Plaintiff cites *Atlantech Distribution, Inc. v. Credit General Insurance Co.*, 30 F. Supp. 2d 534, 536-37 (D. Md. 1998), which states that in this developing area of the law, "courts addressing the effect of a company's Internet presence on personal jurisdiction are in agreement that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'" *Id.* at 536-37 (quoting *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  This summarizes the applicable aspect of the general sliding scale test established in *Zippo Manufacting* and adopted by the Fourth Circuit in *ALS Scan, Inc.*

*v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002).  Neither party to the present case argues that the web sites in issue classify as passive on one end of the scale or truly active to place them on the other end of the scale.  Therefore, the middle ground, which is characterized by "interactive Web sites where a user can exchange information with the host computer," best suits the present case.  *Id.* at 713.  As such, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  *Id.* (citations omitted).

      The commercial nature of the exchange of information on the web site is readily apparent.  The opportunity to register teams and pay a fifty dollar registration fee electronically is clearly significant and likely an attractive matter of convenience for Virginia residents.  This feature also involves solicitation of email addresses and credit card information.  Although a large portion of the web site merely relays information about the Defendants' kickball league, its interactivity and commercial nature cannot be ignored.  These contacts with Virginia certainly classify as minimum contacts through which Defendants availed themselves of the laws of the Commonwealth of Virginia.

Plaintiff has proven that exercising personal jurisdiction over Defendants is consistent with traditional notions of fair play and due process.  Although the parties do not focus on the issue nearly as much, it is important to note briefly, albeit in reverse order, that jurisdiction is also authorized by the Virginia long-arm statute.  Plaintiff alleges authority by means of Section 8.01-328.1(A)(4) of the Virginia Code, which states that a court may exercise jurisdiction over a party "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth."  The injury felt by Plaintiff is indisputably within the Commonwealth, and Defendants would agree that their actions leading to this litigation occurred outside of the Commonwealth.  Thus, the only remaining question is whether Defendants regularly do or solicit business, or engage in any other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered, in this Commonwealth.  *Telco Communications v. An Apple a Day*, 977 F. Supp. 404 (E.D. Va. 1997), helps to easily answer this question.

In *Telco*, this Court determined that "posting a Web site advertisement or solicitation constitutes a persistent

course of conduct." *Id*. at 407.  More specifically, when a party conducts "their advertising and soliciting over the Internet, which could be accessed by a Virginia resident 24 hours a day," the party does so "regularly for the purposes of the long-arm statute." *Id.*  Thus, clearly the Defendants' actions of maintaining the web sites at issue in the present case satisfy the Virginia long-arm statute.

Having found that this Court can maintain personal jurisdiction over the Defendants, the Court next considers the issue of venue.  Defendants seeks to dismiss this case due to improper venue under three theories, each of which is premised on the assertion that this Court does not have personal jurisdiction over the Defendants.  Having found personal jurisdiction, the Court likewise decides these arguments on venue in favor of not dismissing the case.

Defendants also seek in the alternative to transfer venue in this matter to the District of Columbia.  Defendants assert this alternative motion pursuant to 28 U.S.C. § 1631, transfer to cure want of jurisdiction, or 28 U.S.C. § 1406, transfer to cure venue defects.  Having found neither jurisdiction nor venue defect, transfer pursuant to either of these statutes is inappropriate.  However, this Court finds that transfer is appropriate pursuant to 28 U.S.C. § 1404(a).  In light of the fact that courts can transfer cases sua sponte, it

is certainly acceptable to do so here when Plaintiff has even briefed a response to a § 1404(a) transfer.  *See Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986).  The injury was felt by WAKA in Virginia solely because Virginia is where Plaintiff's principal place of business is located.  However, the gravamen of the actions in this case occurred in the District of Columbia.  The District of Columbia is where the defamatory statements were made and widely circulated, where the Defendants' business is registered, and where the entirety of Defendants' activities are located.  The heart of this matter is centered in the District of Columbia, and thus in the interest of justice and for the convenience of all of the parties, that is where the case should be heard.

### IV. Conclusion

For the reasons stated above, the Court will deny Defendants' motions to dismiss and grant the alternative motion to transfer to the District of Columbia.  An appropriate Order will issue.


May _17_, 2006                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                UNITED STATES DISTRICT COURT JUDGE